IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CAMPBELL HARRISON & DAGLEY**, **L.L.P.**, *et al.*, | § § § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. **3:12-CV-4599-L** |
| | § | |
| **ALBERT G. HILL III**, *et al.*, | § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Albert G. Hill, III's and Erin Hill's Motion to Vacate or, in the Alternative, to Modify Arbitration Award (Doc. 28), filed on January 31, 2013; CHD and CNBW's Application to Confirm Arbitration Award (Doc. 1), filed November 14, 2012; and CHD and CNBW's Motion for Hill III Family to Provide Security and to Disclose Trust Transactions (Doc. 53), filed September 3, 2013. After considering the motions, briefs, evidence, record, and applicable law, the court **denies in part and grants in part** Albert G. Hill, III's and Erin Hill's (the "Hills") Motion to Vacate or, in the Alternative, to Modify Arbitration Award (Doc. 28); **denies in part and grants in part** CHD and CNBW's Application to Confirm Arbitration Award (Doc. 1); **denies** CHD and CNBW's Motion for Hill III Family to Provide Security and to Disclose Trust Transactions (Doc. 53); and **dismisses with prejudice** this action.

As set forth herein, the court **grants** the Hills' motion to vacate the arbitration award to the extent that the court: (1) **vacates** as against public policy the portion of the arbitrators' award that provides for $22,524,096.60 in contingent attorneys to CHD and $2,502,677.40 in contingent attorneys' fees to CNBW under the fee agreements; (2) **vacates and remands** the portion of the award that grants $6,643,085.60 in attorneys' fees to Plaintiffs as prevailing parties in the

arbitration, which includes $2,353,136 in hourly attorneys' fees incurred by arbitration counsel Wright & Close, LLP and an additional sum of $4,289,949.60 representing the contingency fee portion of the contract between Plaintiffs and Wright & Close, LLP; (3) **vacates and remands** the portion of the arbitrators' judgment that awards $69,046.59 to CHD and $48,344.86 to CNBW, as prevailing parties, for the portion of the fees, expenses and arbitrators' compensation of the American Arbitration Association previously incurred by Plaintiffs; and (4) **vacates** the portion of the arbitrators' award that provides for postjudgment interest at a rate of five percent per annum. The court **denies** the motion to vacate in all other respects.

With respect to CHD and CNBW's Application to Confirm Arbitration Award, the court **grants** the motion and confirms the arbitrators' award of (1) $3,150,000 in hourly attorneys' fees to CHD for legal work done prior to termination by the Hills; (2) $152,167 in hourly attorneys' fees to CNBW for legal work done prior to termination by the Hills; and (3) prejudgment interest on these amounts at a rate of five percent per annum. The court **denies the** motion to confirm in all other respects.

## I.     Factual and Procedural Background

This case concerns the final resolution of a protracted fee dispute between the Hills and their former attorneys, Campbell Harrison & Dagley L.L.P. ("CHD") and Calloway, Norris, Burdette and Weber, PLLC ("CNBW") (collectively, "Plaintiffs"). On October 17, 2008 the Hills and CHD signed an agreement in which the parties agreed that CHD would act as counsel for the Hills in connection with a multitude of pending legal matters. Doc. 28-1 at 220-34. That agreement specifically outlined the fee structure under which CHD was to be paid for its services. *Id.* at 221-25. The Hills entered into a separate agreement with CNBW, which contained similar terms. Doc. 28-2 at 1-13.

The fee agreement contracts between the Hills and their attorneys each contained an arbitration clause whereby claims or disputes arising under or in connection with the legal services provided would be subject to binding arbitration.  Doc. 28-1 at 228-29 & Doc. 28-2 at 7-8.  The arbitration clauses mandated that the arbitration was to be conducted "pursuant to the Texas General Arbitration Act and the applicable rules of the American Arbitration Association."  *Id.*

Approximately one year after the execution of the fee agreements, the Hills terminated their attorney-client relationship with CHD and CNBW because of their dissatisfaction with litigation outcomes during the year.  Doc. 28-1 at 74-76.  When the parties were unable to reach agreement as to payment of the outstanding legal fees, CHD and CNBW filed a motion to compel arbitration, which was granted by United States District Judge Reed O'Connor on February 18, 2011.  *See Campbell Harrison & Dagley LLP v. Hill*, No. 3:10-CV-2269-O, Doc. 88.  The parties subsequently submitted evidence before an arbitration panel regarding the merits of their positions. Doc. 28-5 at 155.  The arbitrators ruled in favor of CHD and CNBW by entering an award for (1) $3,150,000 in hourly attorneys' fees to CHD for legal work done prior to termination by the Hills; (2) $152,167 in hourly attorneys' fees to Dallas counsel CNBW for legal work done prior to termination by the Hills; (3) $22,524,096.60 in contingent attorneys' fees to CHD and $2,502,677.40 in contingent attorneys' fees to CNBW under the Attorneys' Hourly Rate and Contingency Fee Agreement (the "CHD Fee Agreement") signed on October 17, 2008 and the Dallas Counsel Attorneys' Fee Agreement (the "CNBW Agreement") signed on March 18-19, 2009[1]; (4) prejudgment and postaward interest at a rate of five percent simple interest per annum;

---

[1] Under the CHD Fee Agreement, the total contingency fee consists of "an undivided fifteen percent (15%) interest in the Gross Recovery by Clients (or any one or more of them) resulting from any final, non-appealable judgment, binding written settlement agreement, or other final resolution . . . of Civil Action No. 3:07-CV-02020-O and/or the State Court Actions[.]"  Doc. 1-7 at 6-7.  CNBW, as Dallas counsel, was entitled to receive "ten percent (10%) of the Contingency Fee in the Gross Recovery" to be paid to CHD under the CHD Fee Agreement.  *See* Doc. 1-8 at 3.

(5) $6,643,085.60 in attorneys' fees granted to Plaintiffs, as prevailing parties in the arbitration, which includes $2,353,136 in hourly attorneys' fees incurred by arbitration counsel Wright & Close, LLP and an additional sum of $4,289,949.60 representing the contingency fee portion of the contract between Plaintiffs and Wright & Close, LLP; and (6) $69,046.59 to CHD and $48,344.86 to CNBW for the portion of the fees, expenses and arbitrators' compensation of the American Arbitration Association previously incurred by Plaintiffs. *Id.* at 161.

Plaintiffs seek to confirm the award. Displeased with the arbitrators' decision, the Hills filed this Motion to Vacate or Modify Arbitration Award, contending that the arbitrators' decision is tainted by evident partiality; that the award violates fundamental Texas public policy; that the award exceeds the scope of the arbitrators' authority; or in the alternative, that the court should exercise its inherent authority to modify the award in the best interests of the Hills' minor children. Doc. 28. CHD and CNBW argue that the award was proper and that the Hills fail to meet the stringent burden imposed upon a movant seeking to vacate an arbitration award in Texas. Doc. 30.

## II.    Judicial Review of Arbitration Awards Under Texas Arbitration Act

The contracts at issue contain a choice of law provision stating that the agreement "shall be construed under and in accordance with the laws of the State of Texas" and that arbitration shall take place "pursuant to the Texas General Arbitration Act." *See* Doc. 28-1 at 227-29; Doc. 28-2 at 6-7. While the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), preempts state anti-arbitration laws, it does not prohibit parties from arbitrating under state law rules rather than the rules of the FAA. *Volt Info. Sci., Inc. v. Board of Tr. of Leland Stanford Junior Univ.,* 489 U.S. 468, 478-79 (1989). Since the parties agreed to apply Texas law to their disputes, the court will

apply Texas law and the Texas Arbitration Act ("TAA"), Tex. Civ. Prac. & Rem. Code Ann. §

171.001, *et seq.*

Texas law strongly favors arbitration, and therefore judicial review of an arbitration award

is "extraordinarily narrow." *East Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271

(Tex. 2010); *see also CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002); *Prudential*

*Sec., Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) ("Arbitration of disputes is strongly

favored under federal and state law.").   "Subjecting arbitration awards to judicial review adds

expense and delay, thereby diminishing the benefits of arbitration as an efficient, economical

system for resolving disputes."  *CVN Group, Inc.*, 95 S.W.3d at 238.

The Texas Civil Practice and Remedies Code dictates that the court shall, upon application

of a party, confirm the award unless grounds are offered for vacating, modifying, or correcting it

under other specified sections of the code.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.087.

Thus, "confirmation is the default result unless a challenge to the award has been or is being

considered."  *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 262 (Tex. App.—

Houston [1st Dist.] 2005, pet. denied).  The grounds for vacating an arbitration award are set out

in section 171.088(a), which states:

> On application of a party, the court shall vacate an award if:
> (1) the award was obtained by corruption, fraud, or other undue means;
> (2) the rights of a party were prejudiced by:
>     (A) evident partiality by an arbitrator appointed as a neutral arbitrator;
>     (B) corruption in an arbitrator; or
>     (C) misconduct or wilful misbehavior of an arbitrator;
> (3) the arbitrators:
>     (A) exceeded their powers;
>     (B) refused to postpone the hearing after a showing of sufficient cause for the postponement;
>     (C) refused to hear evidence material to the controversy; or
>     (D) conducted the hearing, contrary to Section 171.043, 171.044, 171.045, 171.046, or 171.047, in a manner that substantially prejudiced the rights of a party; or

(4) there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection.

Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a). "These grounds reflect severe departures from an otherwise proper arbitration process and are of a completely different character than ordinary legal error." *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 684 (Tex. App.—Dallas 2010, pet. denied) (citation omitted). Because of the significant deference afforded to arbitration awards in Texas, "judicial scrutiny of arbitration awards focus[es] on the integrity of the process rather than the propriety of the result." *Tuco, Inc. v. Burlington N. R.R. Co.*, 912 S.W.2d 311, 315 (Tex. App.—Amarillo 1995), *modified on other grounds*, 960 S.W.2d 629 (Tex. 1997). Review of an arbitration award is so limited that an award may not be vacated even if there is a mistake of fact or law. *Universal Comp. Sys., Inc. v. Dealer Solutions, L.L.C.*, 183 S.W.3d 741, 752 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Stieren v. McBroom*, 103 S.W.3d 602, 605 (Tex. App.—San Antonio 2003, pet. denied); *Vernon E. Faulconer, Inc. v. HFI Ltd. P'ship*, 970 S.W.2d 36, 39 (Tex. App.—Tyler 1998, no pet.).

## III. Analysis

### A. Evident Partiality

According to the Hills, the presence of arbitrators James J. Juneau ("Juneau") and Earl F. Hale, Jr. ("Hale") on the panel tainted the arbitration award because of the arbitrators' "relationships with parties adverse to the Hills." Doc. 28 at 16. The Hills note that both Juneau and Hale disclosed that they had professional or social relationships with counsel for CHD and CNBW; had professional or social relationships with parties or witnesses in the arbitration proceeding; and had professional or social relationships with relatives of the parties, counsel, or witnesses in the arbitration proceeding. *Id.* at 17. In their Motion, the Hills do not specify the

nature of these relationships and why such relationships establish "evident partiality" on the part of Juneau or Hale. *See id.* at 16-19.

The evidence attached to the Hills' Motion and contained within their appendix indicates that Juneau and Hale disclosed that: (1) for a six-week period during the summer of 1983, Juneau worked at a law firm founded by Ivan Irwin, Jr., who was one of the defendants in the underlying federal action, *Hill v. Schilling,* No. 3:07-CV-2020-L; (2) Juneau had contact at a number of social functions with Gregg Weinberg, one of the attorneys representing CNBW in the arbitration, between 1993 and 1998; (3) Juneau was a former partner of Robert H. Thomas, who represented Hill's father in *Hill v. Schilling*, and had frequent social and professional contact with Thomas between 1983 and 1998; and (4) Hale "disclosed numerous relationships with parties who had been adverse to [Hill] in the underlying litigation[,]" which appear to consist of mediating or arbitrating cases including some of the attorneys and knowing Thomas through bar activities. *See* Doc. No. 34 at 6 n.3; Doc. 28-4 at 135-36 & 143-45.

Texas statutory law permits vacatur of an arbitration award if "the rights of a party were prejudiced by . . . evident partiality by an arbitrator appointed as a neutral arbitrator[.]" Tex. Civ. Prac. & Rem. Code. Ann. § 171.088(a)(2)(A). "[A] neutral arbitrator . . . exhibits evident partiality . . . if the arbitrator does not disclose facts which might, to an objective observer, create a *reasonable impression* of the arbitrator's partiality." *Burlington N. R.R. Co. v. TUCO, Inc.*, 960 S.W.2d 629, 630 (Tex. 1997) (emphasis added). Texas case law confirms that "the same standard for determining evident partiality is applicable whether the arbitration is governed by the FAA or TAA." *Amoco D.T. Co. v. Occidental Petrol. Corp.*, 343 S.W.3d 837, 844 (Tex. App.—Houston [14 Dist.] 2011, pet. denied). A party alleging evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator, as "[t]he appearance of impropriety,

standing alone, is insufficient." *Bernstein Seawell & Kove v. Bosarge,* 813 F.2d 726, 732 (5th Cir. 1987) (quoting *Sheet Metal Workers Int'l Ass'n Local Union 420 v. Kinney Air Conditioning Co*., 756 F.2d 742, 746 (9th Cir. 1985)); *see also Mantle v. Upper Deck Co.*, 956 F. Supp. 719, 729 (N.D. Tex. 1997) ("To vacate an award upon the mere appearance of partiality would be contrary to the statutory language" of the FAA.).

### 1.   Selection of Juneau and Hale

After the parties to the arbitration selected three arbitrators, Plaintiffs hired a new law firm that had connections to all three panelists. The Hills filed motions to disqualify all three arbitrators. Those motions were granted by the AAA, and the AAA appointed three new arbitrators, including Hale and Juneau. The Hills objected to these appointments, arguing that the parties had the right to veto candidates after reviewing their disclosures. The AAA rejected the Hills' objections and Hale and Juneau served as arbitrators.

The Hills urge that the appointment of Juneau and Hale itself constitutes evident partiality because "[t]here was simply no justification for [the] AAA to unilaterally impose replacements who had multiple pre-existing relationships with the Hills' opponents, and doing so was flatly inconsistent with the selection process that the parties had agreed to and followed." Doc. 28 at 19.

Initially, the Hills have failed to prove that the alleged conflicts disclosed by the arbitrators establish evident partiality. This is not the more typical situation in which a party seeks to establish evident partiality due to the *nondisclosure* of dealings "that might create an impression of possible bias." *Burlington N. R.R. Co.*, 960 S.W.2d at 636 (quoting *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 151 (1968) (plurality op.). The Hills instead urge that the *disclosed* conflicts of Juneau and Hale – when combined with the failure to permit the Hills to veto their selection – justifies the wholesale rejection of the arbitration award. This argument

essentially urges the court to vacate the arbitrators' findings based solely on the appearance of impropriety. That is not the standard for disclosed conflicts. Instead, "courts have adopted a case-by-case objective inquiry into partiality." *Mantle*, 956 F. Supp. at 729 (citations omitted). "[T]here is an onerous burden on a party urging vacatur based on evident partiality . . . The party asserting evident partiality has the burden of proof. It must produce specific facts and the alleged partiality must be direct, definite, and capable of demonstration rather than remote, uncertain, or speculative." *Id.* (citations omitted).

Moreover, an arbitration award may not be vacated because of a trivial or insubstantial prior relationship between the arbitrator and the parties to the proceeding. *See, e.g., Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 283-84 (5th Cir. 2007) (citing *Commonwealth Coatings*, 393 U.S. at 146) ("[I]n nondisclosure cases, an award may not be vacated because of a trivial or insubstantial prior relationship between the arbitrator and the parties to the proceeding."); *see also Bernstein Seawell & Kove v. Bosarge,* 813 F.2d 726, 732 (5th Cir. 1987) ("The party seeking to vacate the award must prove the existence of facts that 'establish a reasonable impression of partiality,' however, the appearance of impropriety alone is not sufficient."). To establish evident partiality, the prior relationship between an arbitrator and the parties to the proceeding must not be remote, uncertain, or speculative. *See, e.g., Positive Software Solutions, Inc.*, 476 F.3d at 283-84 (finding that arbitrator's failure to disclose a former business relationship with counsel for one of the parties did not require vacating arbitration award for evident partiality); *InfoBilling, Inc. v. Transaction Clearing, LLC,* No. SA-12-CV-01116-DAE, 2013 WL 1501570, at *3-*4 (W.D. Tex. Apr. 10, 2013) (holding that failure to disclose counsel's donation to arbitrator's reelection campaign and support of political party that, in turn, supported arbitrator's campaign, did not establish evident partiality); *Kimco Birmingham LP v. Third Creek*

*LLC*, No. 3:07-CV-1642-O, 2010 WL 147942, at *4 & n.2 (N.D. Tex. Jan. 14, 2010) (rejecting claim that a party's possible contacts with the arbitrator prior to the arbitration established evident partiality).

The Hills' claims of evident partiality fall well short of their burden.  The tenuous business and social relationships they cite are minimal and remote in time.  There is no evidence in the record that indicates that any close association ever existed between the two arbitrators and any party or counsel, and certainly nothing gives rise to a showing that there was "evident partiality" on the part of either of the arbitrators.  These relationships were not "so intimate – personally, socially, professionally, or financially – as to cast serious doubt" on the arbitrators' impartiality. *Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673, 680 (7th Cir. 1983); s*ee also Sheet Metal Workers Int'l Ass'n Local Union 420,* 756 F.2d at 746 (A "party alleging evident partiality must establish specific facts which indicate improper motives on the part of the [arbitrator].").  Here, the Hills have not attempted to explain how either Juneau or Hale had sufficient contacts amounting to even an appearance of impropriety, let alone actual bias.

The Hills also appear to contend that evident partiality is established because the arbitration panel was improperly chosen in contravention of the parties' agreement and American Arbitration Association ("AAA") rules.  Doc. 28 at 18.  According to the Hills, the AAA violated its own rules by "unilaterally impos[ing] replacements who were not named on the selection lists previously provided to the parties . . . in direct contravention of the selection procedure the parties had agreed to, and which the AAA had implemented." *Id.* at 18.  They do not, however, explain how this alleged procedural error constitutes evident partiality under the TAA, and they cite no case law to suggest that any such error justifies vacating the arbitration award.

As the Hills concede, the parties did not specifically provide in the text of the respective arbitration clauses how arbitrators would be chosen but instead chose to incorporate the AAA's rules "by reference."  *Id.* at 17.  Rule R-11(a) of the AAA Commercial Arbitration Rules states:

> If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner: The AAA shall send simultaneously to each party to the dispute an identical list of 10 (unless the AAA decides that a different number is appropriate) names of persons chosen from the National Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

Rule R-11(b) of the AAA Commercial Arbitration Rules governs instances where, as here, parties fail to mutually agree upon an arbitrator:

> If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists.

The clear terms of the AAA rule cited above outline that the AAA "shall have power to make the appointment from among other members . . .  without submission of additional lists" if, as here, the parties are unable to make an appointment from a submitted list or the acceptable arbitrators are unable to act.  Moreover, letters from the AAA to the parties indicated that "[i]f the arbitrators cannot be appointed from the list provided, the Association may administratively appoint the arbitrators as authorized in [Rule R-11(b)] without the submission of an additional list."  Doc. 30-3 at 100.

Moreover, Texas courts have explained that the AAA is entitled to substantial deference to interpret its own rules on disqualification of arbitrators:

The AAA's rules provide that the AAA will decide whether an arbitrator is disqualified under its rules and that the AAA's disqualification decision "shall be conclusive."  Several courts have said that an arbitral body's interpretation of its own rules must be given substantial deference.  For example, the Houston Fourteenth Court of Appeals has held that the sufficiency of pleadings in an arbitration is a procedural matter for the arbitrators to decide.

It is not clear that the FAA authorizes vacatur of an arbitration award based on the AAA's allegedly erroneous disqualification of an arbitrator for partiality under its own procedural rules.  The FAA authorizes vacatur for "evident partiality" of arbitrators, but not for an arbitral body's disqualification of an arbitrator under its own rules and standards.  We agree with the Eighth Circuit that vacatur based on a procedural error requires, at the very least, a showing that the AAA manifestly disregarded its own rules.  Following *Stroh*, we conclude that the evidence establishes that the AAA did not so manifestly disregard its own rules as to permit vacatur of the award . . .  Whether we would agree, or whether the evidence would be sufficient to support a finding of "evident partiality" under the FAA, we cannot say the AAA's decision to disqualify [an arbitrator] under its "partiality or lack of independence" standard constitutes a manifest disregard for its own rules.

*Roehrs v. FSI Holdings, Inc.,* 246 S.W.3d 796, 808-09 (Tex. App.—Dallas, 2008, pet. denied)

(citations omitted).

Given the plain language of the AAA rules and the consistent interpretation of those rules as communicated to the parties, no evident partiality appears in the arbitrators' selection or the denial of the Hills' attempts to disqualify Juneau and Hale.  Accordingly, the court declines to vacate the award on this ground.

### 2.  Privilege

As a second basis for finding evident partiality, the Hills insist that the arbitrators wrongfully compelled the production of privileged materials that they improperly considered and cited in the final award.  Doc. 28 at 19-20.  According to the Hills, "[a]n arbitrator who wrongfully compels a party to produce privileged materials and then relies upon those privileged materials in ruling against the party clearly demonstrates 'evident partiality' as stated in Texas Civ. Prac & Rem. Code Ann. § 171.088(a)(2)(A)."  *Id.* at 20.  This assertion does not correctly summarize the

statute, which only instructs a court to vacate an arbitration award if "the rights of a party were prejudiced by . . . evident partiality by an arbitrator appointed as a neutral arbitrator[.]"  Texas Civ. Prac & Rem. Code Ann. § 171.088(a)(2)(A).  Moreover, the Hills have not cited a single case to support the assertion that compelling and relying upon privileged materials establish evident partiality, and the court's independent research fails to yield any confirmation for this proposition.

Even assuming that such a standard existed and that the evidence compelled and improperly considered – which the Hills do not specify – was privileged[2] as the Hills insist, nothing in the record suggests that the evidentiary ruling compelling production was anything more than an erroneous conclusion of law; nor does the record suggest that this ruling was at all motivated by any inherent bias or evident partiality against the Hills.  *See Perry Homes v. Cull,* 258 S.W.3d 580, 599 (Tex. 2008) ("Arbitrators have almost unbridled discretion regarding discovery."); *Centex/Vestal*, 314 S.W.3d at 684 (The grounds for vacatur "are of a completely different character than ordinary legal error.").  The Hills essentially argue that an adverse determination regarding their assertion of privilege establishes the evident partiality of the arbitration panel, rather than a mistake of law or fact; however, as this court has explained, "[i]f adverse decisions by an arbitrator were grounds for vacatur, no arbitration award could stand."  *Mantle*, 956 F. Supp. at 733. Accordingly, the court determines that vacating the award is not proper because of this allegedly erroneous evidentiary ruling.

### B.  Public Policy

The Hills also contend that the fee agreements are unconscionable, that the arbitrators erroneously interpreted the respective fee agreement termination provisions, and that the award should be vacated for violating public policy.  *See* Doc. 28 at 21, 23.  As noted above, the Texas

---

[2] CHD and CNBW firmly contest the Hills' characterization of the compelled evidence as privileged.  *See* Doc. 30 at 20-21.

**Memorandum Opinion and Order – Page 13**

Civil Practice and Remedies Code provides the limited circumstances under which an arbitration award under the TAA may be vacated.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088.  Under the FAA, the statutory provisions are the exclusive grounds for vacatur, and nonstatutory grounds are no longer a basis for vacating arbitration awards.  *See Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir. 2009) (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (5th Cir. 2008)).

Under Texas law, however, certain common law grounds – gross error, manifest disregard of the law, and violation of public policy – may justify vacating an arbitration award notwithstanding the limitations set forth in *Hall Street Associates*.  *See Humitech Dev. Corp. v. Pearlman*, 424 S.W.3d 782, 791 (Tex. App.—Dallas, 2014, no pet.) (citing *Hall St. Assocs.,* 552 U.S. at 590); *see also CVN Grp., Inc.*, 95 S.W.3d at 238 (finding that common law grounds for refusing to confirm an arbitration award, including public policy, remain valid).  In Texas, an arbitration award may be set aside in "an extraordinary case in which the award clearly violates carefully articulated, fundamental policy."  *CVN Grp., Inc.*, 95 S.W.3d at 239.  To support vacatur of an arbitration award based upon public policy, a concern must be "well defined and dominant" and not derived "from general considerations of supposed public interests."  *Id*. at 239-40 (quoting *United Paperworkers Int'l Union v. Misco, Inc*., 484 U.S. 29, 44 (1987)).  For example, an arbitration award may be set aside if it is based on an unlawful contract or illegal transaction.  *See CVN Group*, 95 S.W.3d at 237-38 ("[A]n illegal contract unenforceable by litigation should not gain legitimacy through arbitration.").  An arbitration award that directly conflicts with a Texas constitutional provision also violates public policy.  *See id.* at 239; *see also Lee v. El Paso Cnty.,* 965 S.W.2d 668, 673 (Tex. App.—El Paso 1998, pet. denied) (considering constitutional provision that prohibits granting extra compensation for services already rendered).  Similarly, an arbitration

award may be vacated if it contravenes the Texas public policy prohibiting unconscionable legal fees. *See Lee v. Daniels & Daniels*, 264 S.W.3d 273, 279 (Tex. App.—San Antonio, 2008, pet. denied) (vacating portion of arbitration award permitting recovery of attorney's fees for time spent adversarial to client).

### 1. "Good Cause" for Terminating Attorney Client Relationship

The Hills argue that the arbitrators erred in construing the fee agreements' provision that CHD and CNBW could be terminated "for good cause," thereby violating public policy. *See* Doc. 28 at 23. They urge that the arbitrators should have defined "good cause" from the perspective of a reasonable client, which would have permitted them to avoid the contingency fee based upon alleged poor performance by CHD and CNBW. This is essentially an argument that the arbitrators erred in interpreting a contractual term, which does not justify vacating an arbitration award.

Even if the court were to review the arbitrators' contract interpretation *de novo*, as the Hills wish, they have not established that the definition of "good cause" was so extraordinary as to violate public policy. The arbitrators specifically rejected the Hills' argument that the meaning of "good cause" is ambiguous, or "that 'good cause' means 'any good reason.'" Doc. 1-2 at 5-6. The arbitrators explained:

> [T]here is no credible evidence that this definition was ever discussed during the period when the parties were negotiating the fee agreements, and this concept appeared nowhere prior to Albert G. Hill III's testimony at the hearing. No appellate court in Texas has applied this definition … to do so would, as a practical matter, render any contingent fee agreement illusory[.]

*Id.* "In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). Courts begin this analysis with the contract's express language. *Id.* (citing *Progressive Cnty. Mut.*

*Ins. Co. v. Kelley*, 284 S.W.3d 805, 807 (Tex. 2009)).  If a contract's meaning is uncertain or is reasonably susceptible to more than one interpretation, it is ambiguous and its meaning must be resolved by the finder of fact.  *Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996).  The arbitrators here concluded that the term was not ambiguous.  *See* Doc. 1-2 at 5-6.

The majority of the Hills' argument faults the arbitrators for failing to interpret "good cause" as the Hills did – "to mean simply a good reason" – rather than "in a manner that heavily favored the interests of the attorneys who drafted it."   Doc. 28 at 26.   They urge that the dissatisfaction with the outcome of litigation, to their understanding, was "good cause" to terminate the representation and avoid the contract provision for the contingency fees.   This contention is beside the point.   There is no evidence that the contract interpretation of this undefined term is so extraordinarily incorrect as to violate public policy.   Texas case law does not support construing "good cause" to mean "any good reason" in similar circumstances.   *See, e.g., Whiteside v. Hartung*, No. 14-97-111-CV, 1999 WL 548211, at *6 (Tex. App.—Houston [14th Dist.] July 29, 1999, pet. denied) (Under contingency fee agreement, a client has good cause to discharge an attorney when attorney breaches his fiduciary duty to the client.); *Rocha v. Ahmad*, 676 S.W.2d 149, 153 (Tex. App.—San Antonio 1984, writ dism'd) (Under contingency fee agreement, a client has good cause to discharge an attorney when the "attorney fails to perform his duties in the manner that an attorney of ordinary skill and ability would have performed his duties."); *Campbell Harrison & Dagley L.L.P. v. Lisa Blue/Baron and Blue,* 843 F. Supp. 2d 673, 688 (N.D. Tex. 2011) (defining "good cause" to mean "a clear and serious breach of fiduciary duty").  The Hills have not established a violation of public policy with regard to the meaning of

"good cause," and, accordingly, have not set forth any evidence sufficient to justify vacatur of the arbitration of the award on that basis.

### 2.  Fee Agreements and Unconscionability

Arguing that the fee agreements upheld by the arbitrators are unconscionable, the Hills take exception to what they characterize as the requirement that the Hills "pay a percentage of monies held in preexisting family trusts *regardless of the amount actually collected by the Hills*."  Doc. 28 at 22 (emphasis in original).  The Hills also complain that the combination of a high hourly rate charged by CHD and CNBW combined with a "substantial contingent fee" is unconscionable.  *Id.* Finally, the Hills argue that they will be forced to pay too much money in attorneys' fees to lawyers who failed to make meaningful progress on their cases, urging that they will be responsible for not only a $35 million fee to CHD and CNBW, but also a $25 million fee already awarded to other attorneys by the court.  *Id.* at 23.

Rule 1.04(a) of the Texas Disciplinary Rules of Conduct states that "[a] lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee."  Tex. Discip. R. Prof'l Conduct 1.04(a).  The rule also explicitly provides that an unconscionable fee exists "if a competent lawyer could not form a reasonable belief that the fee is reasonable."  *Id.*  "Whether a particular fee amount or contingency percentage charged by the attorney is unconscionable under all relevant circumstances of the representation is an issue for the factfinder. . . . On the other hand, whether a contract, including a fee agreement between attorney and client, is contrary to public policy and unconscionable at the time it is formed is a question of law."  *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 561 (Tex. 2006) (footnote and citations omitted); *see also Lee,* 264 S.W.3d at 279.  "When interpreting and enforcing attorney-client fee agreements, it is not enough to simply say that a contract is a contract.  There are ethical considerations overlaying the

contractual relationship.  Paramount among those ethical considerations is the fiduciary obligation mandated by the professional nature of the attorney-client relationship."  *Id.* at 280 (quoting *Hoover Slovacek LLP*, 206 S.W.3d at 560) (internal quotation marks omitted).  The burden of establishing the fairness of an attorney-client fee agreement is placed upon the attorney.  *See In re Wells*, 294 F. App'x 841, 845 (5th Cir. 2008) (citing cases); *see also Keck, Mahin & Cate v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 20 S.W.3d 692, 699 (Tex. 2000).

The fee agreements at issue here call for compensation of the attorneys in the form of high hourly fees accrued per a stated rate schedule, plus a contingent fee equal to fifteen percent of the "Gross Recovery" from any final judgment in *Hill v. Schilling*, No. 3:07-CV-2020-O.  The contingency fee awards to Plaintiffs fifteen percent of "the value . . . of any and all assets, cash or non-cash consideration distributed or to be distributed to or for the benefit" of the Hills or held for their benefit as a result of the resolution of the federal and state cases.  Doc. 1-8 at 17.  This additional fee is due, in the absence of good cause for termination of the legal representation, no matter whether the agreement is terminated prior to any recovery.  *See id*. at 21.  The arbitrators found that "[t]here is nothing about a relatively high hourly rate schedule, uncertain as to time of payment, and/or a relatively low contingent percentage, when the prospect of recovery is plenty uncertain, that should be offensive to a competent lawyer, a reasonable client, or an overall traditional public policy of fairness."  Doc. 1-2 at 4.  The arbitrators outlined the reasons supporting the conclusion that that the Hills had entered into the fee agreements "freely and knowingly, without duress or mistake" and that the agreements themselves were not unconscionable.  *See id*. These reasons were (1) the Hills' familiarity with these exact same kinds of hourly rates combined with contingency fees from their prior counsel, Bickel and Brewer; (2) the Hills' sophistication, education level, and experience as frequent consumers of legal services; (3) the course of conduct

in negotiating the fee agreements included "a period of fairly intensive negotiations" and the exchange of several draft documents; (4) the Hills' inability to pay the firms' monthly billing statements on a timely basis due to their lack of available financial resources; (5) "some evidence" suggesting that the Hills consulted independent legal counsel regarding the proposed fee agreements; and (6) evidence that CHD strongly encouraged the Hills to consult with independent counsel regarding the proposed fee arrangements.  *Id.* at 5.  The arbitrators also found that the Hills were

> specifically informed that their stated hourly rates were "on the high end," and that the rates charged under the fee agreement were higher, in part, because Hill, III had informed CHD that he would likely be unable to pay the firm's monthly billing statements on a timely basis due to his lack of available financial resources.

*Id.*

In Texas, "[c]ontracting for a contingent fee in combination with an hourly fee does not in and of itself violate DR 1.04."  *Celmer v. McGarry*, 412 S.W.3d 691, 706 (Tex. App.—Dallas 2013, no pet.) (quoting Tex. Comm. on Prof'l Ethics, Op. 518, 59 Tex. B.J. 795, 796 (1996)).  "But the total fee to be paid under such arrangement must be reasonable, considering all of the factors set out in DR 1.04."  *Id.* (internal quotation marks omitted).   Factors to be considered in determining the reasonableness of a fee are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Tex. Disciplinary R. Prof'l Conduct, R. 1.04(b)(1)-(8).

Having reviewed the arbitrators' findings and the record, the court determines that the agreements here, at the time they were formed, violated public policy because they were unconscionable. The evidence before the arbitrators established that the hourly rates to be charged under the contracts were set at an amount nearly as high or, in many instances, higher than CHD and CNBW had previously charged any other client. *See* Doc. 28-1 at 49-51 & 117-22. This "relatively high hourly rate schedule," *see* Doc. 1-2 at 4, paid eight of the eleven attorneys between $475 and $545 per hour. *See* Doc. No. 1-8 at 14 & 29. The arbitrators found that the high hourly rate was properly and clearly disclosed to the Hills and was justified because the Hills "would likely be unable to pay the firm's monthly billing statements on a timely basis[.]" *See* Doc. 1-2 at 5. The arbitrators, however, do not explain how the *total* fee, which includes the fifteen percent contingency fee, is consistent with the fiduciary obligation owed to the Hills. The court concludes that it is not.

The court is unaware of any jurisdiction that has condoned a hybrid fee arrangement wherein an attorney received a *high* hourly fee in addition to a contingency fee. To the contrary, other courts have only recognized contingency fee contracts that combine substantially *reduced* hourly and contingency fee rates. *See Skannal v. Jones Odom Davis & Politz, L.L.P.,* 124 So. 3d 500, 514 (La. Ct. App. 2013); s*ee also State, Pub. Emps. Ret. Bd. v. Cacioppo,* 813 P.2d 679, 685 (Alaska 1991); *Cotchett, Pitre & McCarthy v. Universal Paragon Corp.,* 187 Cal. App. 4th 1405, 1421 (Cal. Ct. App. 2010); *Marketfare Annunciation, LLC v. United Fire & Cas. Co.,* No. 06-7232, 2009 WL 3672758, at *1-*2 (E.D. La. Oct. 30, 2009); *Arnal v. Travelers Prop. Cas. Ins. Co.,* No. 2:04-CV-1563-PHX-JWS, 2007 WL 1412492, at *2 (D. Ariz. May 14, 2007). The purpose of a fee agreement is to compensate an attorney for the time spent performing legal

services on behalf of his or her client.  *See Lee,* 264 S.W.3d at 280-81.  "Implicitly, if not explicitly, the Disciplinary Rules demand that a reasonable legal fee be charged only for legal services."  *Id.* at 280.  Texas courts have explained as follows:

> Attorney contingency fee contracts serve two main purposes: first, they allow plaintiffs who cannot afford to pay a lawyer up-front to pay the lawyer out of any recovery and, second, such contracts, because they offer the potential of a greater fee than might be earned under an hourly billing method, compensate the attorney for the risk that the attorney will receive no fee whatsoever if the case is lost.  *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).  Under contingency fee contracts, the lawyer, in effect, lends the value of legal services that are secured by a share in the client's potential recovery. *Id.* Under some contingency fee contracts, the attorney also agrees to advance the out-of-pocket costs of the litigation; in such cases, the attorney not only risks loss of the fee, but also risks loss of actual expenditures.

*In re Polybutylene Plumbing Litig.*, 23 S.W.3d 428, 436-37 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd).  The contingency fee here does not compensate Plaintiffs for the value of their legal work or the risk of nonpayment.  The contracts already include a "relatively high hourly rate schedule" designed and meant to reimburse CNBW and CHD for the value of the services to be rendered and the likelihood that they would not be paid on a timely basis.  *See* Doc. 1-2 at 5.  The additional contingency fee does not compensate Plaintiffs for their legal work and does not reflect payment based upon the factors set forth in Texas Disciplinary Rule of Professional Conduct 1.04(b).  *See Davis Law Firm v. Bates*, No. 13-13-00209-CV, 2014 WL 585855 (Tex. App.—Corpus Christi Feb. 13, 2014) ("[C]harging a $70,000 fee for no legal services performed is an unconscionable fee."); *see also Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 868 (Tex. 2000) (Gonzales, J., concurring in part and dissenting in part) ("While a contract may entitle a lawyer to a substantial fee for little or no work, a lawyer may nonetheless be required by his or her fiduciary duty to decline the fee.  Additionally, a law firm may breach its fiduciary duty if it provides little or no services, but still collects a substantial part of its clients recovery in the face

of a pending settlement."); *In re Wells*, 294 F. App'x at 847-48 (finding contract unconscionable where attorney "placed his clients in an unnecessarily pressured situation, performed little or no work under that contract, did not expect to perform much work under that contract in the immediate future, and failed to disclose material information to his clients").

The resulting award to CHD and CNBW is "far in excess of what is reasonable and customary" to compensate them for the value of the legal services rendered on the Hills' behalf. *Curtis v. Commission for Lawyer Discipline*, 20 S.W.3d 227, 233 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see also Lee,* 264 S.W.3d at 280-81.  Permitting a fifteen percent contingency fee here flies in the face of the well established legal principles that authorize contingency fees, as the attorneys' fees do not compensate Plaintiffs for any risk that they will receive no payment whatsoever.   CHD and CNBW receive a generous hourly rate whether or not there is a final judgment, binding written settlement or partial settlement agreement, or other final resolution.  The contingency fee instead acts as an *unearned* payment for Plaintiffs, no matter the risk they incurred, the work they performed, or the eventual outcome of the litigation.  In plain language, this is not simply a contract that was ill-advised when signed, but it is one in which Plaintiffs will receive something for nothing.  The contingency fee is a guaranteed fifteen percent payment, on top of the generous hourly rate, for no additional work or risk of nonpayment.  The court finds this type of contingency fee particularly troublesome and contrary to well-established Texas precedent.  The contingency fee provision therefore results in a windfall that Texas public policy cannot countenance.

One commentator has repeatedly condemned this type of contingency fee arrangement, and explains as follows:

> The ethical justification for these approvals [of contingency fees] necessarily lies
> in the assumption that the lawyer's risk of receiving no fee, or a fee that effectively

> will be well below her normal hourly rate or opportunity cost, merits compensation in and of itself: Bearing the risk entitles the lawyer to a commensurate risk premium. Conversely, a lawyer not bearing risk cannot charge a risk premium. Therefore, a lawyer who charges a substantial risk premium in the form of a standard contingency fee in a case without meaningful fee risk is charging both an illegal and unethical fee.

Lester Brinkman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*, 65 Fordham L. Rev. 247, 271 (1996); *see also* Lester Brinkman, *Contingent Fees Without Contingencies: Hamlet Without the Prince of Demark?*, 37 UCLA L. Rev. 29, 71-72 (1989) ("[F]or a contingency fee to be reasonable and therefore not 'clearly excessive,' the lawyer must bear some risk of nonrecovery. Any other interpretation would result in an absurdity.").

Texas courts have found that such fee agreements violate public policy. In *Wythe II Corp. v. Stone*, 342 S.W.3d 96, 103 (Tex. App.—Beaumont 2011, pet. denied), the appellate court explained that an attorney fee arrangement in which the attorney could unilaterally convert his hourly fee into a contingency fee was unenforceable. That court stated:

> A contingent-fee contract is permissible in Texas in part because the potential for a greater fee compensates the attorney for assuming the risk that the attorney will receive no fee if the case is lost, while the client is largely protected from incurring a net financial loss in the event of an unfavorable outcome. *Hoover*, 206 S.W.3d at 561 (citing *Arthur Andersen & Co.*, 945 S.W.2d at 818). If the attorney could earn a reasonable fee on an hourly basis until recovery is assured and the work complete, but later exercise a unilateral option to collect a percentage of the client's recovery, the fee would no longer be "contingent" on anything – in effect, the client could be required to pay regardless of recovery. Shifting the risk of non-recovery to the client through the unilateral option provision would undermine one significant justification for the higher compensation sometimes received under a contingent-fee contract. *Id.* Simply stated, when an attorney bears no risk of going unpaid, risk of non-recovery is not a factor in assessing the reasonableness of the fee.

*Id.* In *Wythe*, the court essentially found that a contingency fee in which the client bore the entire risk violated public policy. That is the situation here. Like *Wythe*, the attorneys here earn a reasonable hourly fee that is "on the high side" and bear no risk of non-recovery.

**Memorandum Opinion and Order – Page 23**

Similarly, in *Celmer v. McGarry*, a Texas appellate court held that an attorney failed to establish that a fee agreement – charging a relatively standard contingency fee and a $200 hourly fee representing an amount less than his usual hourly fee – was fair and reasonable. 412 S.W.3d at 707. The fee agreement there called for an attorney to be paid fifty percent of certain stock obtained by successfully appealing an adverse judgment in a divorce proceeding, in addition to a fixed hourly fee of $200 per hour. *Id.* at 695. The court effectively held that the attorney's evidence – establishing that his hourly fee was reasonable and that the contingency fee amount was standard for divorce litigation – did not prove that the *total* fee was reasonable. *Id.* The court here, as in *Celmer*, is not faced with the question of whether the generous hourly fee or the fifteen percent contingency provision, standing alone, was individually reasonable; instead, Plaintiffs are required to establish that the *total* fee set forth under the contracts was consistent with Texas public policy. They have not done so.

Other jurisdictions, too, recognize that hybrid fees that eliminate the risk of the "outcome of the matter" violate public policy. *See Skannal,* 124 So.3d at 514-15; *see also In re Mkt. Ctr. E. Retail Property, Inc.*, 730 F.3d 1239, 1251 (10th Cir. 2013) (considering attorneys' fees in bankruptcy case).

At the time that the fee agreements were signed with the Hills, payment to CHD and CNBW for their legal services was not contingent upon any recovery. The Hills would owe high hourly rates regardless of whether they ultimately prevailed in any litigation. There was a risk to CHD and CNBW of *late* payment, *which was fully taken into account and reflected in the high hourly fees*; but there was not a risk to CHD and CNBW of *no* recovery. There was nothing contingent about Plaintiffs' recovery of their attorneys' fees.

The burden is on Plaintiffs to establish that the *total* fees – including the hourly rate and the fifteen percent contingency payment – are reasonable. It is not enough to argue that the contract is valid because the fee arrangement was entered into knowingly. *See, e.g., Hoover Slovacek LLP*, 206 S.W.3d at 560 ("When interpreting and enforcing attorney-client fee agreements, it is not enough to simply say that a contract is a contract. There are ethical considerations overlaying the contractual relationship.") (internal quotation marks and citation omitted). That the Hills understood the nature of the agreements they entered into does not establish that the agreements were themselves fair and reasonable. Plaintiffs misapprehend the meaning of unconscionability under Texas law. A client can agree to a contract provision with full understanding of its meaning and the contract can still be unconscionable and violate public policy. This is the situation facing the court. Plaintiffs have failed to prove that a competent lawyer could form a reasonable belief that the fee arrangements, at the time they were entered into, with respect to the fifteen percent contingency fee, were reasonable. *See id.* at 561. In other words, the fee agreements are arrangements that charge or allow the collection of an attorney's fee that is unconscionable. The court therefore concludes that the portion of the arbitrators' award based on the fifteen percent contingency award from the underlying settlement violates the carefully articulated, fundamental policy of Texas that prohibits unconscionable attorneys' fee arrangements. Accordingly, the court grants the Hills' motion with respect to their allegations of unconscionable contingency fee provisions and vacates that portion of the arbitrators' award.

### C. Inherent Authority to Modify an Arbitration Award

The Hills move the court to modify the arbitration award under its "inherent authority," allegedly obtained when the court appointed a guardian *ad litem* under Fed. R. Civ. P. 17(c) to review the underlying settlement agreement, since "the Settlement Agreement impacts the rights

of the Hills' minor children[.]"  Doc. 28 at 27.  According to the Hills, the court's appointment of

a guardian *ad litem* in *Hill v. Schilling,* No. 07-CV-2020-L, confers broad authority to inquire into

the arbitration recovery and to modify the arbitration award in this case because it "directly and

negatively impact[s] the rights of the Hills' minor children."  *Id*. at 27-29.

Section 171.091 of the Texas Civil Practice & Remedies Code lists the statutory grounds

for modifying or correcting an arbitration award.  Like the statutory grounds for vacating an

arbitration award, the grounds for modifying an award are extremely narrow, and may be invoked

if:

>    (1) the award contains:
>    (A) an evident miscalculation of numbers; or
>    (B) an evident mistake in the description of a person, thing, or property referred to
>    in the award;
>    (2) the arbitrators have made an award with respect to a matter not submitted to
>    them and the award may be corrected without affecting the merits of the decision
>    made with respect to the issues that were submitted; or
>    (3) the form of the award is imperfect in a manner not affecting the merits of the
>    controversy.

Tex. Civ. Prac. & Rem. Code Ann. § 171.091(a).  The Hills do not argue that modification is

permitted under this provision; they point to no case law to establish that a court may modify an

arbitration award because it might affect the interest of a minor.  Instead, the Hills cite *Hoffert v.

General Motors Corp.*, 656 F.2d 161 (5th Cir. Unit A 1981)*,* which they believe to stand for the

broad proposition that a federal court has inherent authority to modify any award in the interest of

minor children when a guardian *ad litem* has been appointed.  *See* Doc. 28 at 27-28.

*Hoffert* does not stand for such broad authority.  In that case, a minor child was entitled to

the proceeds from a settlement and judgment in a products liability action.  *See Hoffert,* 656 F.2d

at 163.  In reviewing the settlement agreement for approval and because it appointed a guardian

*ad litem* under Rule 17(c), the district court found that it had continuing discretion to supervise the

contingency fee contract for legal services rendered on behalf of the minor and modify the contingency fee, even in the absence of an objection from any party. *Id.* at 164. The Fifth Circuit affirmed. The court does not interpret *Hoffert* to indicate that it has authority to modify an arbitration award interpreting a contractual agreement – which is unlike a settlement agreement presented to a district court for "judicial ratification," *see id.* at 165 – simply because the court appointed a guardian *ad litem* in the underlying litigation.

Even assuming it possesses such inherent authority, the court does not believe that it is appropriate to modify the arbitrator's award simply because the Hills entered into a contractual agreement with their lawyers that they later regretted. The Hills have not provided compelling evidence or legal authority sufficient to meet their burden as to this exceptional request. Accordingly, the court denies the Hills' request to modify the arbitration award in the interests of their children.

### D.  Award of Arbitration Attorneys' Fees and Arbitration Costs

The Hills contend that the arbitration award should also be vacated because the arbitrators granted punitive damages, thereby exceeding the scope of their power. *See* Doc. 28 at 26. They challenge the award of $4,289,949.60 in contingent attorneys' fees granted to reimburse Plaintiffs' lawyers in the arbitration proceeding, stating that these fees constitute punitive damages that are not permitted in a breach of contract action. *Id.* at 27. The court finds that the award of $2,353,136 in hourly fees and $4,289,949.60 in contingency fees was granted to Plaintiffs as prevailing parties in a breach of contract matter, rather than as punitive damages, and did not exceed the arbitrators' authority. This fee award, however, must be vacated and remanded to the arbitrators in light of the court's ruling that the fee agreements are arrangements that charge or permit the collection of a fee that is unconscionable.

The court's determination that the contingency fee provisions of the CHD Fee Agreement and the CNBW Fee Agreement must be vacated necessarily affects the award of attorneys' fees and arbitration costs to Plaintiffs as prevailing parties in the arbitration.  The arbitrators awarded to Plaintiffs $2,353,136 in hourly attorneys' fees incurred by arbitration counsel Wright & Close, LLP and an additional $4,289,949.60 representing the contingency fee portion of the contract between Plaintiffs and Wright & Close, LLP.  *See* Doc. 1-2 at 9-10.  The arbitrators also granted reimbursement of a total of $117,391.45 for the administrative fees and expenses of the AAA and the compensation and expenses of the arbitrators that were previously incurred by Plaintiffs.  *Id.* at 10-11.  These fees and costs were awarded in large part based upon Plaintiffs' success in obtaining over $25 million in contingency fees through the arbitration.  The contingency fee award has now been vacated.  The court is unable to determine or apportion the amount of attorneys' fees incurred by Wright & Close, LLP for successfully prosecuting the breach of contract claim, which remains valid, versus those based upon the contingency fee award that has been set aside.  The court therefore must remand the arbitrators' award of attorneys' fees and arbitration costs to Plaintiffs as the prevailing parties in the arbitration for the determination of the attorneys' fees due for legal work on which Plaintiffs were successful.

The award of Plaintiffs' attorneys' fees incurred in connection with their representation by Wright & Close, LLP in the arbitration proceeding is based upon the arbitrators' determination that "CHD and CNBW are the 'prevailing parties' in this proceeding, and thus are entitled to recover their attorneys' fees that were necessarily incurred in connection with the prosecution of their breach of contract claims[.]"  Doc. 1-2 at 9.  The arbitrators found that Plaintiffs "are entitled to full reimbursement of reasonable fees and expenses, having prevailed upon their claims in this matter."  *Id.*  Under Texas Civil Practice and Remedies Code section 38.001(8), a party may

recover its reasonable attorneys' fees when it prevails on a claim for breach of contract.  To recover attorneys' fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages.  *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997).  To be a prevailing party, "a plaintiff must prove compensable injury and secure an enforceable judgment in the form of damages or equitable relief."  *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.,* 295 S.W.3d 650, 652 (Tex. 2009).  A party is considered a "prevailing party" even if it does not recover the full amount of damages sought.  *See, e.g., Mira Mar Dev. Corp. v. City of Coppell,* 421 S.W.3d 74, 104-05 (Tex. App.—Dallas 2013, no pet.) (plaintiff that recovered $40,000 of $800,000 demand entitled to attorneys' fees as "prevailing party"); *see also Crisp Analytical Lab, L.L.C. v. Jakalam Props., Ltd*., 422 S.W.3d 85, 92-93 (Tex. App.—Dallas, 2014, pet. filed) (A jury award of $513 to a plaintiff seeking $9,478.44 makes it a "prevailing party" under section 38.001(8).).  Because the court has found the contingency fee provision to be unconscionable, the award to Plaintiffs necessarily will be significantly reduced.  A reduction in the award to a prevailing party necessitates a redetermination of the attorneys' fees awarded under section 38.001.  *See Lee*, 264 S.W.2d at 282.

The court in *Lee v. Daniels & Daniels* faced a nearly identical situation.  There, the appellate court found that an attorneys' fee agreement that required payment of fees charged by an attorney for time spent in his efforts to terminate the attorney-client relationship was unconscionable, and therefore vacated a portion of the arbitration award.  *Lee*, 264 S.W.3d at 280-81.  Because the resolution of the appeal resulted in an approximate forty percent reduction in the actual damages awarded to the plaintiff, the *Lee* court vacated the award of attorneys' fees in connection with the arbitration and remanded so that the arbitrator could be given an opportunity

to reconsider the attorneys' fee award and to determine "the amount to be awarded, if any, of attorney's fees associated with the arbitration and any appeal." *Id.* at 282-83.

Because the court is not "reasonably certain that the [factfinder] was not significantly influenced by the erroneous amount of damages," *id.* at 282 (quoting *Barker v. Eckman*, 213 S.W.3d 306, 314 (Tex. 2006), the issue of attorneys' fees must be remanded to the arbitrators for further consideration and determination.  The arbitrators must also reconsider the award of the administrative fees and expenses of the AAA to the extent that such award was based upon a finding that Plaintiffs prevailed on their claim for contingency fees.  *See Lee*, 264 S.W.3d at 282. In light of the court's opinion that the arbitration award was, in large part, based upon an unconscionable contingency fee provision, the arbitrators must calculate the attorneys' fees for Wright & Close LLP and arbitration costs that remain based solely on Plaintiffs as prevailing parties in their breach of contract action without reference to any aspect of the invalid contingency fee award.

## IV.    CHD and CNBW's Motion for Security

CHD and CNBW also filed a motion pursuant to Texas Civil Practice and Remedies Code Section 171.068(b)(4), requesting that the court order the Hills to post security for the satisfaction of a possible judgment in this proceeding and to disclose transactions by the MHTE-Albert G. Hill III Trust to prevent depletion of the funds necessary to pay the arbitration award.  *See* Doc. 53. CHD and CNBW indicate that funds in this trust may be insufficient to satisfy the arbitration award and that the Hills have depleted the trust funds rapidly.  Section 171.068(b)(4), however, applies to security "during the period an arbitration is pending before the arbitrators or at or after the conclusion of the arbitration[,]" at which time the court may "require security for the satisfaction of a court judgment that *may be later entered* under an award."  Tex. Civ. Prac. & Rem. Code §

171.068(b)(4) (emphasis added).   The only case cited by CHD and CNBW relates to an unsuccessful motion – decided while the underlying dispute was still awaiting arbitration – "to provide security to satisfy an underlying arbitration ruling that may be reduced to judgment by this Court."  *General Fid. Ins. Co. v. WFT, Inc.*, No. 3:11-cv-448-P, 2012 WL 4900905, at *1 & n.1 (N.D. Tex. Oct. 15, 2012).   Other than their concern that the Hills will take steps to avoid paying the arbitration award or will be unable to do so based upon the trust corpus, CHD and CNBW do not identify a statutory basis for the court to require security or grant further equitable relief at this stage of the proceeding.

Even if the court has the authority to require prejudgment security to secure an arbitration award pending a final judgment, the request for security is now moot because the court has herein ruled on the underlying validity of the arbitration award.  As the Hills correctly note:

> If the Hills' motion to vacate is granted, then Claimants' motion for security will be mooted.  If, on the other hand, the Hills' motion to vacate is denied, then the Court will presumably enter a judgment and again Claimants' motion would be mooted.

Doc. 77 at 2.  The Hills will be required to satisfy the arbitration award by the judgment itself, so no further security is warranted.

The court also denies CHD and CNBW's motion to the extent that it seeks disclosure of transactions that may affect the MHTE-Hill III Trust from which payment of the arbitration award may be made, as CHD and CNBW have no award against the Trust and are not beneficiaries under the Trust.  The Trust was not a party to the arbitration and is not a party to this action.  To the extent that CHD and CNBW request the court issue orders or take other action, such as ordering the CM/ECF registration of a new trustee of the MHTE-Hill III Trust, in *Hill v. Schilling*, No. 3:07-CV-2020-L, those motions and requests will be considered under that case caption.

**Memorandum Opinion and Order – Page 31**

## V.       Interest

The arbitrators found that Plaintiffs are entitled to prejudgment interest at a rate of five

percent simple interest per annum on all of the attorneys' fees awarded as breach of contract

damages beginning on April 22, 2011 and continuing until the award is paid by the Hills.  *See* Doc.

1-2 at 9-10.  The arbitrators also awarded postaward interest of five percent per annum, "in the

event that this Award is ultimately reduced to Judgment by a court of competent jurisdiction, . . .

beginning on the date that the Judgment is signed, and continuing thereafter until the date on which

the Judgment is fully paid by [the Hills.]"  *Id.* at 11.

Prejudgment interest is calculated under state law. *Boston Old Colony Ins. Co. v. Tiner*

*Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002); *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314,

1329 (5th Cir. 1994).  In Texas, prevailing parties receive prejudgment interest as a matter of

course and an arbitration award "bears interest in the same manner as a judgment of a court of last

resort." *Executone Info. Sys., Inc.*, 26 F.3d at 1329-30.  Under both the common law and the Texas

Finance Code, prejudgment interest begins to accrue on the earlier of: (1) 180 days after the date

a defendant received written notice of a claim, or (2) the date suit is filed.  Tex. Fin. Code Ann. §

304.104.  Prejudgment interest is awarded to compensate fully the injured party, not to punish the

defendant, and is considered compensation allowed by law as additional damages for lost use of

the money due between the accrual of the claim and the date of judgment.  *See Johnson & Higgins,*

*Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998).  Generally, the interest rate is the

same for prejudgment and postjudgment interest.  *See* Tex. Fin. Code Ann. § 304.103 ("The

prejudgment interest rate is equal to the postjudgment interest rate applicable at the time of

judgment."); *see also Phillips v. Bramlett*, 407 S.W.3d 229, 238 (Tex. 2013).  When the parties'

contract does not include a rate, section 304.003 of the Texas Finance Code provides that the

postjudgment interest is "five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System . . . is less than five percent[.]"  Tex. Fin. Code Ann. § 304.003(c)(2).  At the time of the arbitrators' judgment and today, the prime rate has been less than five percent.

The arbitrator's November 13, 2012 award correctly orders the Hills to pay Plaintiffs prejudgment interest at five percent simple interest per annum beginning on April 22, 2011, the date on which the arbitration demand was filed.  *See* Doc. No. 1-2 at 9.  Accordingly, CHD is entitled to prejudgment interest on the arbitrators' award of (1) $3,150,000 in hourly attorneys' fees to CHD for legal work done prior to termination by the Hills; and (2) $152,167 in hourly attorneys' fees to CNBW for legal work done prior to termination by the Hills; to be calculated at five percent per annum from April 22, 2011, to May 28, 2014, the date judgment will be entered in this case.  Prejudgment interest on this amount is $488,465.75 for CHD and $23,596.31 for CNBW, making a total amount of damages and prejudgment interest of $3,638,465.75 for CHD and $175,763.31 for CNBW.

Because the court has vacated the portion of the arbitrators' award that grants $22,524,096.60 in contingent attorneys' fees to CHD and $2,502,677.40 in contingent attorneys' fees to CNBW, no prejudgment interest may be assessed on these amounts.  In addition, because the court has vacated and remanded the portion of the arbitrators' award granting Plaintiffs $6,643,085.60 in attorneys' fees incurred in connection with the arbitration proceeding and $117,391.45 in administrative fees and expenses, the court may not award prejudgment interest on that amount.

The arbitration award also orders that postjudgment interest shall be assessed at five percent simple interest per annum, beginning on the date the judgment is entered by the court, and

continuing thereafter until the date the judgment is fully paid.  *See* Doc. No. 1-2 at 11.  Plaintiffs

request that the court apply this rate pursuant to *Tricon Energy Ltd. v. Vinmar International, Ltd.,*

718 F.3d 448 (5th Cir. 2013).  *See* Doc. No. 40.  The Hills oppose this request, urging the court to

apply the statutory postjudgment interest rate set forth under 28 U.S.C. § 1961 because the contract

does not set forth a postjudgment interest rate and Plaintiffs' claims are barred by waiver.  *See*

Doc. No. 43.

The court agrees with the Hills' interpretation of *Tricon Energy*.  That case stands for the

proposition that parties are free to contract their own postjudgment interest rate and bypass Section

1961.  *Tricon Energy*, 718 F.3d at 457-58.  An arbitration panel "may determine whether the parties

have sufficiently contracted their own rate and, if they have, indicate the rate that should be

applied."  *Id.* at 457-58.  Here, however, there is no indication that the parties intended to contract

around Section 1961.  This is not a case like *Tricon Energy*, where the parties entered a contractual

arrangement regarding postjudgment interest and, as part of their agreement to arbitrate all disputes

under the contract, submitted the issue as a matter of contract interpretation to the arbitrators.  *See*

*id.* at 458.

Even if Plaintiffs and the Hills submitted the issue of postjudgment interest to the

arbitration panel in their arbitration proceedings, the contract itself was silent about the topic, and,

as the Fifth Circuit Court of Appeals explains, "[T]he circuits have unanimously agreed that 'an

arbitration panel may not establish a post-judgment interest rate itself.'"  *Id.* at 457 (quoting

*Newmont U.S.A. Ltd. v. Insurance Co. of N. Am.,* 615 F.3d 1268, 1277 (10th Cir. 2010)); *see also*

*Tricon Energy,* 718 F.3d at 457 n.13 (quoting *Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 387

F.3d 1021, 1023 (9th Cir. 2004) ("[O]nce an arbitration award is confirmed in federal court, the

rate specified in § 1961 applies.  This is the case even if the arbitration award purported to grant

post-judgment interest.")).  "Parties wishing to contract around the statutory rate must do so using clear, unambiguous, and unequivocal language, otherwise, the contract merely merges into the judgment."  *Id.* at 458-59 (citation and internal quotation marks omitted).  The parties did not include postjudgment interest in their underlying fee agreements.  Therefore, the arbitrators were without authority to set a postjudgment interest rate.

Plaintiffs are therefore entitled to postjudgment interest at the applicable federal rate on the total amount of the judgment entered in this case.  Federal courts award postjudgment interest pursuant to 28 U.S.C. § 1961.  Accordingly, postjudgment interest on total amount of the judgment entered in this case, $3,814,229.06, shall accrue at the current applicable federal rate of .09 percent per annum from the date judgment is entered in this case on May 28, 2014, until paid in full.

## VI.    Conclusion

For the foregoing reasons, the court **denies in part and grants in part** Albert G. Hill, III's and Erin Hill's (the "Hills") Motion to Vacate or, in the Alternative, to Modify Arbitration Award (Doc. 28); **denies in part and grants in part** CHD and CNBW's Application to Confirm Arbitration Award (Doc. 1); and **denies** CHD and CNBW's Motion for Hill III Family to Provide Security and to Disclose Trust Transactions (Doc. 53).

Specifically, in light of the court's ruling, the court **grants** the Hills' motion to vacate the arbitration award to the extent that the court: (1) **vacates** as against public policy the portion of the arbitrators' award that provides for $22,524,096.60 in contingent attorneys to CHD and $2,502,677.40 in contingent attorneys' fees to CNBW under the fee agreements; (2) **vacates and remands** the portion of the award that grants $6,643,085.60 in attorneys' fees to Plaintiffs as prevailing parties in the arbitration, which includes $2,353,136 in hourly attorneys' fees incurred by arbitration counsel Wright & Close, LLP and an additional sum of $4,289,949.60 representing

the contingency fee portion of the contract between Plaintiffs and Wright & Close, LLP; (3) **vacates and remands** the portion of the arbitrators' judgment that awards $69,046.59 to CHD and $48,344.86 to CNBW, as prevailing parties, for the portion of the fees, expenses and arbitrators' compensation of the American Arbitration Association previously incurred by Plaintiffs; and (4) **vacates** the portion of the arbitrators' award that provides for postjudgment interest at a rate of five percent per annum.  The court **denies** the motion to vacate in all other respects.

With respect to CHD and CNBW's Application to Confirm Arbitration Award, the court **grants** the motion and confirms the arbitrators' award of (1) $3,150,000 in hourly attorneys' fees to CHD for legal work done prior to termination by the Hills; (2) $152,167 in hourly attorneys' fees to CNBW for legal work done prior to termination by the Hills; and (3) prejudgment interest on these amounts at a rate of five percent per annum.  The court **denies the** motion to confirm in all other respects.

The court **remands** this case to the arbitrators for the limited purpose to determine – consistent with this Memorandum Opinion and Order – the amount of the attorneys' fees incurred by Wright & Close, LLP and the costs and expenses of the arbitration owed to Plaintiffs as prevailing parties in their breach of contract action for hourly attorneys' fees due to CHD and CNBW prior to termination by the Hills.

Accordingly, the court **dismisses with prejudice** this action.  Judgment will be entered by separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 28th day of May, 2014.

Sam A. Lindsay
United States District Judge